UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVONTAH LEE NELSON,

        Petitioner,                        Case Number 17-10564
                                                      Honorable David M. Lawson

v.

TONY TRIERWEILER,

        Respondent.
_____/

## **OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

In a petition for a writ of habeas corpus filed under 28 U.S.C. § 2254, Michigan prisoner Davontah Lee Nelson challenges his convictions of first-degree felony murder and first-degree child abuse. Nelson argues that the evidence was insufficient to support the convictions, other-acts evidence was admitted improperly, and the convictions of both crimes violated his rights under the Double Jeopardy Clause of the Fifth Amendment. The warden contends that the petition should be denied because two of the claims are barred by procedural default and all of the claims lack merit. The Court finds that the petitioner's claims lack merit and do not warrant federal habeas relief. The Court, therefore, will deny the petition.

I.

The petitioner's convictions arise from the death of his infant daughter on October 9, 2013. The Michigan Court of Appeals summarized the facts on direct appeal as follows:

> The victim, Amareah, was almost five months old when she died while in Nelson's care on October 9, 2013. Amareah's pediatrician testified that she was healthy in August 2013. Amareah's mother testified that she and Nelson lived together with their two children, and she left Amareah with Nelson to go to work. Gavin Witten testified that at some point that evening he heard ten or fifteen repetitive thudding noises come from Nelson's apartment.

Firefighter Dan Kimball testified that he was dispatched to Nelson's apartment at about 7:00 p.m. According to Kimball, Amareah was lying on the floor with no pulse or breathing, and he began performing CPR. Nelson stated to Kimball that the baby was on the floor when he woke from a nap on the couch. According to Deputy Sherriff Jesse Smith, Nelson stated that he woke from his nap and saw his nearly two-year-old son holding Amareah around her neck. Detective Michael Babycz testified that when he interviewed Nelson at the hospital, Nelson stated that he fell asleep on the couch and, when he woke, he saw his son holding Amareah to his chest with his arms around her. During a later interview, Detective Craig Raisanen testified that Nelson stated that he tried to give Amareah a bottle but she was being fussy and, out of frustration, he pushed Amareah off the bed and she hit her head on the floor. Detective Raisanen detailed several different versions of events that Nelson gave various investigators, which included that Nelson "was hammering" Amareah's chest while trying to perform CPR.

Though CPR did restart Amareah's heart and breathing, she was removed from life support when doctors determined she had no chance of recovering from her injuries. Amareah died at around 11:00 p.m. that evening.

According to Nelson, who testified at trial, he was in bed with Amareah and trying to give her a bottle when he drifted off to sleep. When he woke up, he noticed that Amareah was falling off the bed, he saw her go over the side, and Amareah was not breathing after she landed on the floor. While performing CPR, he pounded on Amareah's chest, hoping that it would clear her airway or restart her heart. Nelson testified that he told people different things during interviews to get them to stop questioning him.

Washtenaw County Medical Examiner Jeffrey Jentzen testified that he performed an autopsy on Amareah and discovered that she had a lacerated liver, a skull fracture, cranial hemorrhaging, and brain swelling. Jentzen testified that Amareah's specific brain injuries most commonly resulted from high-velocity injuries. Peter Strouse, a pediatric radiologist, testified that x-rays and CT scans of Amareah showed that she had 19 bone fractures in various states of healing, including 15 rib fractures, a skull fracture, and fractures to bones in her arms, legs, and hands. Strouse opined that Amareah's rib fractures were consistent with child abuse and that, while fractures can occur from CPR, CPR did not explain the placement of Amareah's specific fractures. In contrast, Oakland County Chief Medical Examiner Ljubisa Dragovic testified that the injuries to Amareah's chest and abdomen were consistent with "vigorous resuscitation efforts." However, Dragovic testified that a fall of the nature that Nelson described did not explain the victim's skull fracture.

At trial, Amareah's mother testified that Nelson had previously committed domestic violence against her and Amareah's brother. Amareah's mother testified that Nelson would sometimes "snap" and punch, kick, or choke her. She also observed marks on Amareah's brother and, when she confronted Nelson, Nelson

stated that he had spanked the toddler with a belt. However, Amareah's mother never saw Nelson act violently toward Amareah.

The trial court [sitting without a jury] found Nelson guilty of first-degree child abuse and felony murder. Specifically, it found that Nelson had repeatedly lied about the events leading to Amareah's death and that the evidence was consistent with Nelson throwing or punching Amareah to death.

*People v. Nelson*, No. 326343, 2016 WL 2731121, *1-2 (Mich. Ct. App. May 10, 2016).

The trial court sentenced Nelson to life in prison without parole for felony murder, and a lesser concurrent sentence for child abuse. On direct appeal, Nelson raised the same issues presented here in his habeas corpus petition. The Michigan Court of Appeals affirmed, and the state supreme court denied leave to appeal. *Id*. at *2-5; *People v. Nelson*, 500 Mich. 883, 886 N.W.2d 621 (2016).

Nelson raised the following claims in his habeas petition:

I. His due process rights were violated when he was convicted of first-degree child abuse and felony murder predicated on first-degree child abuse without sufficient evidence to prove those offenses beyond a reasonable doubt.

II. He was denied a fair trial by the introduction of irrelevant and highly prejudice [*sic*] evidence concerning prior injuries sustained by the decedent.

III. His conviction for first-degree child abuse must be vacated because his conviction for this offense as well as felony murder predicated on the same offense violate double jeopardy.

The respondent opposes the petition contending that the other acts evidence and double jeopardy claims should not be reviewed here because they are "procedurally defaulted," and all of the claims lack merit.

The "procedural default" argument is a reference to the rule that the petitioner did not preserve all his claims in the trial court by timely objection, and the state court's denial of those claims on that basis is an adequate and independent ground for the denial of relief under state law,

which is not reviewable here. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). That defense does not apply here. The petitioner's lawyer raised the evidence issue in the trial court, and the court of appeals did not rely on any flaw in the petitioner's presentment of either claim when it denied relief, addressing the merits of both, albeit reviewing the double jeopardy issue for plain error.

Moreover, it is not necessary to address this procedural question. It "is not a jurisdictional bar to review of the merits," *Howard v. Bouchard*, 405 F.3d 459, 476 (6th Cir. 2005), and "federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits," *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997) ). The procedural default will not affect the outcome of this case, and it is more efficient to proceed directly to the merits.

II.

Certain provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), which govern this case, "circumscribe[d]" the standard of review federal courts must apply when considering an application for a writ of habeas corpus raising constitutional claims, including claims of ineffective assistance of counsel. *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003). A federal court may grant relief only if the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or if the adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2).

"Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings,

as opposed to the *dicta*, of [the Supreme] Court's decisions." *White v. Woodall*, 572 U.S. 415, 419 (2014) (quotation marks and citations omitted). "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103, (2011). The distinction between mere error and an objectively unreasonable application of Supreme Court precedent creates a substantially higher threshold for obtaining relief than *de novo* review. Mere error by the state court will not justify issuance of the writ; rather, the state court's application of federal law "must have been objectively unreasonable." *Wiggins*, 539 U.S. at 520-21 (quoting *Williams v. Taylor*, 529 U.S. 362, 409 (2000) (quotation marks omitted)). The AEDPA imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be "given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010).

A.

Nelson contends that the prosecution did not present sufficient evidence to convict him of first-degree child abuse and first-degree felony murder, because it did not establish that he knowingly or intentionally harmed Amareah, the child victim. The Michigan Court of Appeals disagreed, finding ample circumstantial evidence of an assault on the child causing her death.

Summarizing the trial evidence, that court noted that the child was found unresponsive, shortly after a loud banging was heard by a witness in an adjoining apartment. The child's body had multiple fractures, and the fatal injuries were consistent with high-velocity impacts. Nelson had a history of explosive behavior, and he had struck his partner and other child before when he had "snapped." And Nelson had given multiple inconsistent statements explaining the source of

-5-

Amareah's injuries.

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). On direct appeal, review of a sufficiency of the evidence challenge must focus on whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). In a habeas corpus proceeding, "[t]he *Jackson* standard must be applied 'with explicit reference to the substantive elements of the criminal offense as defined by state law.'" *Brown v. Palmer*, 441 F.3d 347, 351 (6th Cir. 2006) (quoting *Jackson*, 443 U.S. at 324 n.16)).

As with the state appellate court on direct appeal, a federal habeas court "does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor has been observed by the trial court." *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003) (citing *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983)). "[A] reviewing court 'faced with a record of historical facts that supports conflicting inferences must presume — even if it does not affirmatively appear in the record — that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" *McDaniel v. Brown*, 558 U.S. 120, 133 (2010) (quoting *Jackson*, 443 U.S. at 326).

The state courts faithfully applied these principles in light of the state-law definitions of these offenses. Under Michigan law, any murder committed during the perpetration of a felony is first-degree murder. Mich. Comp. Laws § 750.316. The elements of felony murder are: (1) the killing of a human being, (2) with the intent to kill, to do great bodily harm, or to create a very high risk of death or great bodily harm with knowledge that death or great bodily harm was the

probable result [i.e., malice], (3) while committing, attempting to commit, or assisting in the commission of any of the felonies specifically enumerated in the statute. *See Matthews*, 319 F.3d at 789 (citing *People v. Carines*, 460 Mich. 750, 759, 597 N.W.2d 130 (1999)). To convict a defendant of the underlying predicate felony of first-degree child abuse, the prosecution must prove that the defendant "knowingly or intentionally cause[d] serious physical or serious mental harm to a child." Mich. Comp. Laws § 750.136b(2); *see People v. Maynor*, 470 Mich. 289, 295, 683 N.W.2d 565 (2004); *People v. Gould*, 225 Mich. App. 79, 87, 570 N.W.2d 140 (1997).

The evidence presented to the trial judge established these elements beyond a reasonable doubt. A neighbor testified that a loud banging sound emanated from Nelson's apartment. Shortly afterward, the child was found unresponsive. The medical and expert testimony demonstrated that the victim had suffered injuries consistent with high velocity impacts and that she had 19 bone fractures at various stages of healing at the time of her death. The victim's mother testified about Nelson's acts of domestic violence against her and her son when he was angry, and Nelson admitted that he was upset with the infant victim that evening. That evidence was sufficient to establish that Nelson acted with the requisite intent to support his first-degree felony murder and first-degree child abuse convictions. Additionally, Nelson changed his story several times. Consequently, a rational trier of fact could discount his version of events.

Nelson challenges the credibility of witnesses and the trial court's evaluation of the evidence presented at trial. But that challenge is misdirected. It is the job of the fact-finder at trial, not a federal habeas court, to resolve evidentiary conflicts. *Jackson*, 443 U.S. at 326; *Martin*, 280 F.3d at 618; *see also Walker v. Engle*, 703 F.2d 959, 969-70 (6th Cir. 1983) ("A federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume — even if it does not affirmatively appear in the record — that the trier of fact resolved

any such conflicts in favor of the prosecution, and must defer to that resolution."). The trial court's verdict flowed from a reasonable interpretation of the evidence presented.

Nelson is not entitled to habeas corpus relief on his first claim.

B.

Next, Nelson contends that the state trial judge erred when he allowed the prosecution to present — and then considered — evidence of the child victim's prior injuries and his own earlier acts of domestic violence against the victim's mother and brother. In the state appellate court, he presented the claim as a violation of Michigan Rule of Evidence 404(b). The state court treated it as such, and, after parsing the elements of that evidentiary rule, found no error. *Nelson*, 2016 WL 2731121 at *3-4.

An alleged violation of state evidence Rule 404(b) is not cognizable on habeas review. "[S]tate-court evidentiary rulings cannot rise to the level of due process violations unless they 'offend[] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (quoting *Montana v. Egelhoff*, 518 U.S. 37, 43 (1996)). Admission of evidence that a defendant committed a criminal act other than the charged offenses is not fundamentally unfair, particularly when it is not offered to prove the defendant's general bad character or propensity to commit the charged crime.

The state courts viewed that other-acts evidence as tending to prove Nelson's intent to injure the child, not to establish his general bad character. The prosecutor did not make a propensity argument. But even if he had made such an argument, the Supreme Court has declined to hold that similar other-acts evidence is so extremely unfair that its admission violates fundamental conceptions of justice, *Dowling v. United States*, 493 U.S. 342, 352–53 (1990), although it has found "no question that propensity would be an 'improper basis' for conviction,"

-8-

*Old Chief v. United States,* 519 U.S. 172, 182 (1997). Such matters are more appropriately addressed in codes of evidence and procedure than under the Due Process Clause. *Id.* at 352. Put more directly, "[t]here is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence." *Bugh v. Mitchell,* 329 F.3d 496, 512 (6th Cir. 2003); *see also* Fed. R. Evid. 413 and 414 (allowing such evidence in federal criminal trials involving sexual misconduct).

This claim will not support issuance of a writ of habeas corpus.

C.

Lastly, Nelson argues that convicting him of both felony murder and the predicate felony of first-degree child abuse violates the Double Jeopardy Clause. The state court of appeals, citing the Fifth Amendment, proceeded to analyze the issue by comparing the elements of the two crimes — first-degree felony murder and first-degree child abuse — to see if they amounted to the same offense. That analytical test is sometimes referred to as the *Blockburger* test, after *Blockburger v. United States*, 284 U.S. 299, 304 (1932). That test "inquires whether each offense contains an element not contained in the other; if not, they are the same offense and double jeopardy bars additional punishment and successive prosecution." *United States v. Dixon*, 509 U.S. 688, 696 (1993); *Blockburger*, 284 U.S. at 304.

When looking at the discrete offenses of first-degree felony murder and first-degree child abuse, it does appear that one contains elements that the other does not. For instance, as the state court of appeals noted, felony-murder requires proof that the defendant killed someone, whereas first-degree child abuse does not. *Nelson*, 2016 WL 2731121 at *2. But that analysis ignores the reality that felony-murder also requires proof of an underlying felony, and when that enumerated felony also is a count of conviction, the elements of that felony are completely subsumed into the

-9-

felony-murder count, thereby satisfying *Blockburger*'s same elements test. *See People v. Jordan*, No. 342634, 2019 WL 1049689, at *2 (Mich. Ct. App. Mar. 5, 2019) (Shapiro, J., concurring) ("In every felony murder case, each element of the predicate felony must be proven beyond a reasonable doubt. Thus, in each case, the elements of the predicate felony are fully incorporated in the elements of felony murder. In my view, conviction and sentence of felony murder and the predicate offense fails the *Blockburger* test and constitutes multiple punishments in violation of the Double Jeopardy Clause. Nonetheless, in light of binding Michigan Supreme Court precedent, I concur.").

However, although the Double Jeopardy Clause "protects against multiple punishments for the same offense," *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969), it does not prohibit a state from defining one act of conduct to constitute two separate criminal offenses. As the Supreme Court has explained, "[b]ecause the substantive power to prescribe crimes and determine punishments is vested with the legislature . . ., the question under the Double Jeopardy Clause whether punishments are 'multiple' is essentially one of legislative intent." *Ohio v. Johnson*, 467 U.S. 493, 499 (1984). Therefore, "even if the two statutes proscribe the same conduct, the Double Jeopardy Clause does not prevent the imposition of cumulative punishments if the state legislature clearly intends to impose them." *Brimmage v. Sumner*, 793 F.2d 1014, 1015 (9th Cir. 1986). When "a legislature specifically authorizes cumulative punishments under two statutes, . . . a court's task of statutory construction is at an end and the prosecutor may seek and the trial court or jury may impose cumulative punishment under such statutes in a single trial." *Missouri v. Hunter*, 459 U.S. 359, 368-69 (1983).

The Michigan Supreme Court has held that the state legislature intended such multiple punishments under its felony-murder statute. In *People v. Ream*, 481 Mich. 223, 240, 750 N.W.2d

536, 546 (2008), the court held "that convicting and sentencing a defendant for both first-degree felony murder and the predicate felony does not violate the 'multiple punishments' strand of the Double Jeopardy Clause . . . ." Its conclusion has been fairly criticized as a misapplication of *Blockburger* test. *See id*. at 244, 750 N.W.2d at 548 (Cavanagh, J., dissenting) ("The majority misapplies the *Blockburger* test by comparing the abstract elements of a compound offense to one of its predicate offenses, rather than comparing the actual elements that were established at trial and that actually comprise the defendant's convictions. In addition, the majority errs by accepting the result reached by its application of the *Blockburger* test without considering the fundamental matter of legislative intent."). Nonetheless, when a federal habeas court determines whether a state legislature intended to authorize separate, cumulative punishments under the circumstances presented, the Court "must accept the state court's interpretation of the legislative intent for the imposition of multiple punishments." *Brimmage*, 793 F.2d at 1015; *see also Hunter*, 459 U.S. at 368.

The petitioner's argument on this claim does not support the issuance of a habeas corpus writ.

### III.

None of the petitioner's claims presents a basis to issue a writ of habeas corpus under 28 U.S.C. § 2254(d). The state courts' decisions in this case were not contrary to federal law, an unreasonable application of federal law, or an unreasonable determination of the facts. The petitioner has not established that he is presently in custody in violation of the Constitution or laws of the United States.

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus is **DENIED.**

s/David M. Lawson  
DAVID M. LAWSON  
United States District Judge

Date: May 3, 2019

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first-class U.S. mail on May 3, 2019.

s/Susan K. Pinkowski  
SUSAN K. PINKOWSKI

---